## Howe and others vs. Colby and others.

Where a grant of land is otherwise void as against the grantor's creditors, the grantee cannot defend against a bill filed by such creditors on the ground that the grant was made in execution of a trust in favor of one *not made a party to the action,* or who does not in the action set up such trust.

Where money placed in the hands of a married woman by her mother, to be used by her in providing for the support of the mother during the remainder of her life, was invested in land by the husband, the title to which was taken in his own name : *Held*, that as between the husband and his creditors the money must be regarded as belonging to him, and the land purchased therewith could not be voluntarily conveyed by him to a third party to be reconveyed to his wife, so as to be discharged of his debts.

APPEAL from the Circuit Court for *Dane* County.

Creditor's bill, filed originally by *Howe* against *George A. Spaulding*, the judgment debtor, and *Henry W.* and *Emily E. Colby* and others as fraudulent grantees of certain lands from said *Spaulding*.   *Howe's* judgment against *Spaulding* was obtained March 27th, 1863, on a note executed July 5th, 1858. The complaint avers that on that day, and for a long time prior thereto and thereafter, *Spaulding* was the owner in fee and in possession of certain described real estate in the town of Burke in said county, containing two hundred acres, which was largely improved, and which he managed, and used and disposed of the rents, issues and profits ; that said *George A. Spaulding*, and *Mary*, his wife, by a deed purporting to have been executed July 21st, 1858 (acknowledged October 2d, 1858 ; recorded January 4th, 1859), conveyed the whole of said real estate to one Harrison Colby, the deed expressing a consideration of $2620 ; that said Harrison Colby and Mary Jane, his wife, by a deed purporting to have been executed August 21st, 1858 (acknowledged October 2nd, 1858 ; recorded January 4th, 1859), reconveyed the whole of said real estate to said *Mary Spaulding*, the consideration named being $2700; that said *Mary* and *George A. Spaulding*, by a deed purporting to have been executed February 16th, 1861 (acknowledged and recorded the same day), conveyed a certain described portion of said real estate (about eighty acres) to *Emily E. Colby*, wife of *Henry W. Colby* (who is a son of said Harrison and Mary Jane Colby), the consideration named in the deed being $1280 ; that said conveyances were all made and taken without any consideration whatever, and for the

purpose of placing the title to said real estate beyond the reach of the creditors of said *George A. Spaulding*, and to hinder and delay them in the collection of their debts; and that said *Mary Spaulding, Emily E. Colby* and *Henry W. Colby* hold the land in trust for the benefit of said *George A. Spaulding*, and have no beneficial interest in it. The complaint con· tains other averments not important here.

The joint answer of *George A.* and *Mary Spaulding* and *Emily E.* and *Henry W. Colby* admits that said *George A.* was in possession and held the legal title to said real estate at the time mentioned in the complaint, but denies that he was ever equitably entitled to it; admits the several conveyances alleged in the complaint, but denies the alleged fraudulent design, or that the defendants hold any of the property in trust for said *George A. Spaulding*. It then sets up the following facts: *Mary Spaulding*, at the time of her intermarriage with *George A. Spaulding*, in 1833, received from her father about $200 in money and property; afterwards, before moving to said town of Burke, she received other valuable property from her father, and at the time of his death received from his estate $269, and with the money so received and the avails of such property, the first purchases of land were made by her and her said husband in said town of Burke (to which they removed in 1841), consisting of about 120 acres purchased of the government, and a tract purchased of one Bush at about the government price, one forty of which was afterwards traded for eighty acres. About the same time the mother of said *Mary* came to her house to live, and to be taken care of by her during life. She was aged and infirm, and brought with her $500, which she put into the hands of said *Mary* to provide and pay for her support; and she had previously given her said daughter $50 for the same purpose. These amounts were also used by said *Mary* and *George A.* to make said purchases of land, and the other purchases subsequently made; and all the land ever bought in the name of *George A. Spaulding*, and mentioned in

the complaint, was purchased with the money of said *Mary* and that of her mother, " which last was given said *Mary* by her mother, with the arrangement and assistance of her other children and family, as a sacred trust to be scrupulously appropriated by her in the best manner possible to provide for her mother in her old age during life; and the same was so accepted, and was laid out in land as the most profitable investment in the opinion of said *Mary*. And the money given said *Mary* by her father as aforesaid was so invested in land for the benefit of herself and children as her separate property, and it was never designed either by said *Mary* or *George A.*, that said money, or the land purchased therewith, should be or become his property. Said *George* took the deeds in his own name for the purpose of convenience, supposing that the transfer could be made at any time when all said purchases and trades should be complete; and while by him so held the trusts were recognized and carried out by the support of *Mary's* said mother, and apportionment of the daughters and support of the family of said *George* and *Mary*. Said *George* has been, nearly all the time since their removal to this state, out of health and feeble, and a large portion of the time partially blind, and some of the time entirely so, and has been able to do but little on said farm, and nothing has been added by him to the little fortune of said *Mary* and her mother, and the same has only been increased by improvements made from time to time, and the advance in prices of real estate. The family of said *Mary* and *George* consists of one son, now twelve years old, and three daughters all married. *Mary's* mother still lives, decrepit and bed-ridden, and entirely dependent upon the property now in *Mary's* hands for her support. Said *George* never at any time had any means of his own, except as he might be considered to have acquired some rights or interest in the proceeds of said real estate, subject to said trusts." The answer further avers that " said note was given to said plaintiff by *George A. Spaulding* without the knowledge of

said *Mary Spaulding*, and she did not know of the existence thereof, nor of any debt due the plaintiff until after or about the time of the maturity of said note, and not until long after said transfers to Harrison Colby and *Mary Spaulding*. And defendants state the truth about said transfers to be, that the health of said *George A.* becoming worse, and not knowing when he might be called away, he was anxious to carry out the design always entertained of having the legal title convey- ed to said *Mary*, to whom it equitably belonged, and proposed to her to convey enough of said property to reasonably carry out said trust, to some third person, by him to be conveyed to said *Mary;* and having accurately calculated his said obli- gations, the design was effected by the transfer of said proper- ty to Harrison Colby, and by him to said *Mary*, the principal consideration of which was as aforesaid. Afterwards said *Mary* conveyed eighty acres of said land to her daughter *Emily E. Colby*, intending to give her as a portion about the sum of $800, and her husband *William H.* paying $480 to said *Mary*."

The court tried the cause upon complaint and answer, and found that *George A. Spaulding* was the owner of the premises in dispute at the time of contracting the debt and giving the note upon which the plaintiff *Howe* had obtained judgment; that the deed from *Spaulding and wife* to Harrison Colby, and that from said Colby to *Mary Spaulding*, were voluntary, and void as to said *Spaulding's* creditors whose debts were contracted before said deeds; that *Emily E. Colby*, when she took the deed from *George A.* and *Mary Spaulding*, had knowledge that *Mary Spaulding's* title was voluntary and void as aforesaid, and said *Emily* was not a *bona fide* purchaser, but took the land subject to *Spaulding's* debts existing at the time of the deed to *Mary Spaulding*. As conclusions of law he held that *Mary Spaulding* and *Emily E. Colby* should be adjudged to execute to the receiver deeds of the land described in the complaint and held by them, to be sold &c. to satisfy the plain- tiff's judgment and costs; that the receiver should be required

to sell first the lands not conveyed to *Emily E. Colby*, and if the other lands should satisfy the judgment, should reconvey to *Mrs. Colby;* that *George A. Spaulding* and *Henry W. Colby* join with their wives in such conveyances, &c. Judgment was rendered accordingly; and the defendants *Henry W.* and *Emily E. Colby* filed exceptions to the finding, and appealed.

Other creditors besides *Howe* became parties plaintiff before or after judgment; but the determinations of the court in their cases are of no importance here.

*E. & C. T. Wakeley*, for appellants:

The lands were all purchased with the money of *Mary Spaulding* or her mother, on an understanding or parol trust that they should be held by *George A. Spaulding* for the benefit and support of *Mrs. Spaulding's* mother, and as the property in fact of *Mrs. Spaulding.* The conveyance to *Mary Spaulding* was made to carry out or execute the trust. And the eighty acres in controversy on this appeal were conveyed by *Emily E. Colby* for the consideration of $480, paid by her husband, *Henry W.*, the other $800 being intended as a gift or portion. The answer explicitly denies all fraud, and denies that *Mrs. Spaulding* knew of the note to *Howe* when she re-received the conveyance. 2. Sec. 7, ch. 84, R. S., prohibits a resulting trust in favor of the person furnishing the consideration when the conveyance is made to another. But by sec. 8 a trust results to the creditors of the person furnishing the consideration. And although courts will not enforce such a trust in favor of the *cestui que trust*, yet the trustee not only may voluntarily execute it, but is under a high moral obligation to do so; and if he conveys to the person furnishing the consideration before his own creditors obtain a judgment lien upon the land, it is not subject to or affected by their demands. This is law, and common sense, and common justice. *Proseus v. McIntyre*, 5 Barb., 424; *Fargo v. Ladd*, 6 Wis., 106–118; *Rasdall v. Rasdall*, 9 Wis., 379; *Davis v. Graves*, 29 Barb., 480; *Clarks' Adm'r v. Rucker*, 7 B. Mon., 583;

4 Denio, 442. The mere fact of the legal title being in the trustee when the debt was contracted, does not make the land liable to the debt. On the contrary, by the express provisions of sec. 8, it is liable to be taken by the creditors of the person who furnished the consideration. 3. If it should be held that the land while in *Mary Spaulding's* hands was liable to the claims of *Spaulding's* creditors, yet *Mrs. Colby* is shown by the answer to have been a *bona fide* purchaser. No notice to her of a fraudulent intent, or of a want of consideration in the conveyance to *Mary Spaulding*, is shown. There is not a fact stated in the answer which casts suspicion upon her purchase. No knowledge of her father's indebtedness is shown; the conveyance to her was not voluntary. It was a case, however, of inadequate consideration. But this, in the absence of fraud, does not invalidate the purchase. An advancement to a child, in consideration of love and affection, and when no value whatever is paid, is upheld unless the grantor is shown to be in embarrassed circumstances, and that he did not retain sufficient property to pay his debts. No such thing appears from the pleadings in this case. Even a voluntary conveyance is not presumed to be void. A fraudulent intent must be proven. Secs. 4, 5, ch. 190, R. S.; *Frazer v. Western*, 1 Barb. Ch., 220, 237; *Salmon v. Bennett*, 1 Conn., 525, 654; *Arnett v. Wanett*, 6 Ired., 41; *Jackson v. Peck*, 4 Wend., 300. 4. In any view which it is possible for the court to take, it should be held that *Mrs. Colby* has as interest in or lien on the land proportioned to the amount she paid, or that her husband paid. It has repeatedly been held that in the case of mere inadequacy of consideration, the purchaser, if not protected to the full extent, shall be protected *pro tanto*, and be repaid the amount advanced out of the proceeds of the land, or perhaps held to have an undivided interest in it proportioned to the sum paid in comparison with the value. *Wright v. Stanard*, 2 Brock. (C. C.), 314; *Scott v. Winship*, 20 Geo., 429; *Hubbs v. Bancroft*, 4 Ind., 389; *Herschfeldt v. George*, 6 Mich., 456. And in

*Seymour v. Briggs*, 11 Wis., 204, this court held a conveyance for an inadequate consideration valid—the grantee being the daughter of the grantor—and the conveyance, as in this case, being intended partly as an advancement.

*H. W. & D. K Tenney*, for respondents.

*By the Court*, DIXON, C. J.   If a trust exists in favor of *Mrs. Spaulding's* mother, or she has any equitable right to the land, it is not to be enforced in this action.   She is not a party, and does not complain of any breach of her daughter's obligation to maintain and provide for her.

As between *Mr. Spaulding* and his creditors, the money which was received in consideration that *Mrs. Spaulding's* mother should have a home and support in his family during life, and which she has had now for nearly twenty five years, must be regarded as the money of *Mr. Spaulding.*   It vested in him as the husband in the same manner as the money and property received by *Mrs. Spaulding* from the estate of her father.   All the money being *Mr. Spaulding's* by virtue of his marital rights, there is no basis for the trust in favor of *Mrs. Spaulding* as against his creditors for which the counsel for the defendants contend, and the conveyances from *Mr.* and *Mrs. Spaulding* to Harrison Colby, and from Harrison Colby and wife back again to *Mrs. Spaulding*, were clearly voluntary, and void as to such creditors.   Besides it seems very suspicious, and is too late, to revive a secret trust of that kind to cut off the claims of *bona fide* creditors who had trusted *Mr. Spaulding* as the owner of the property.

And as to the conveyance from *Mrs. Spaulding* and her husband to the defendant *Emily E. Colby*, we are satisfied, from the facts and circumstances given in the answer, that both *Mrs. Colby* and husband well knew the fraudulent character of the two former conveyances.

The judgment of the circuit court is therefore affirmed.