THE STATE EX REL. LEDERER VS. THE INTER-NATIONAL IN-
VESTMENT COMPANY.

*October 9 — October 23, 1894.*

*Corporations: For what purposes may be formed: Construction of stat-
utes: Action to annul: Who may maintain.*

1. A corporation whose primary object is without statutory authority
   can have no legal existence, even though among of its declared
   purposes are some for the promotion of which the law permits cor-
   porations to be formed.
2. Thus, a corporation whose primary object is to obtain money from
   its members is *held* to be unauthorized, although its purposes, as
   declared in its articles of incorporation, are " to encourage frugality
   and economy in its members; to create, husband, and distribute
   funds from monthly instalments, dues, or investments from its
   members; to purchase, take, hold, sell, convey, lease, rent, and
   mortgage real estate and personal property; to loan surplus accu-
   mulations; and to carry on and conduct a general investment busi-
   ness."
3. Sec. 1771, R. S., authorizes the formation of corporations for certain
   designated purposes, " or for any lawful business or purpose what-
   ever, except," etc.  *Held,* that these general words extend only to
   things of a nature kindred to those specifically mentioned.
[4. Whether a mere *resident* of the state can, under sec. 3241, R. S.,
   maintain an action to annul the existence of a corporation, not
   determined.]

ACTION to annul the existence of a corporation, under
sec. 3241, R. S.

The defendant appears to have been incorporated July 7,
1893; and its original articles of organization and incorpo-
ration were amended December 8, 1893, so as to contain,
among other things, in substance and effect, the duties and
salaries of each and every of the several officers, directors,
and agents of the company; that the business of said cor-
poration shall be to encourage frugality and economy in
its members, to create, husband, and distribute funds from
monthly instalments, dues, or investments from its mem-

bers, to purchase, take, hold, sell, convey, lease, rent, and mortgage real estate and personal property, to loan surplus accumulations, and to carry on and conduct a general investment business; that said corporation shall have no capital stock, but shall be composed of incorporators and members, who shall be admitted in the manner therein particularly defined; that said corporation shall issue incorporators' shares, originally, only to the persons who signed the original articles of incorporation, and to such other persons as the said incorporators or their assigns shall nominate: provided, however, that not to exceed twelve incorporators' shares shall be issued, one to each; that contracts of membership, in such form as said rules prescribe, shall be entered into only with persons who become members of the corporation, but one person may hold and own any number of such contracts, and the same may be assigned as provided in said rules; that for the failure or neglect to pay monthly instalments promptly as they mature, fines shall be imposed, and forfeitures declared and enforced, in the sums and in the manner as the said rules provide, and other methods and conditions upon which members shall be accepted, discharged, or expelled shall be such as are created and prescribed by the said rules; but no person except those holding incorporators' shares shall be a member of the corporation unless he holds a contract of membership therein, but every person holding a contract of membership shall be a member thereof; that not less than four contracts of membership shall issue upon any single application.

The contract of membership is prescribed in the rules which are made a part of the articles, and among other things contains in effect the following: That for and in consideration of a membership fee of $5, and the promise and agreements of the second party herein expressed, the first party doth hereby grant unto the second party, his

heirs, representatives, and assigns, so long as he and they shall keep the said promises and agreements, but not longer, all the rights and benefits provided by the articles of organization and rules of the company; and the second party therein promises and agrees to pay unto the company each month, from the date thereof until the contract is retired or forfeited, the sum of $2, and also agrees to comply with all the requirements of the rules of the company; that if he keeps his agreements therein contained, but not otherwise, then, in consideration of the premises, the company will pay to him, his heirs, executors, administrators, or assigns, out of the reserve fund (referred to in the rules) accumulated for that purpose, on or before forty-three years from and after the date hereof, the sum of $1,000, provided that this contract is then in force, and has not been reached and paid under the further provisions hereof; *or* the company doth further agree that, if the holder hereof shall well and truly keep his said agreement, this company will pay to him, his heirs, executors, administrators, or assigns, out of the members' trust fund (referred to in the rules) accumulated for that purpose, when there shall be sufficient money in that fund therefor, and when this contract is reached in its order of payment, and not before, the sum of $1,000, subject, however, to discount pursuant to the provisions of article 14 of the rules: provided, however, that this contract has not then been paid pursuant to the first foregoing provision thereof; that if the second party shall fail to pay any instalment within the time specified by the rules, or if he shall fail to obey and observe the said rules, this company shall have the right to cancel and revoke this contract and terminate this membership, without notice, proceeding, or process.

The rules further provide that every person desiring to become a member shall make written application for the number of contracts he desires, not less than four, and shall

accompany his application with a membership fee of $5 for each contract applied for, but the company shall have the right to reject any application upon the return of the membership fee; that upon receipt of such application this company shall immediately return to such applicant a statement showing the numbers of the contracts that will issue upon the application, and, if the applicant shall in writing agree to accept the contracts bearing the numbers so designated, the contract of membership shall be deemed complete; but, if he shall refuse to accept such contracts, he shall immediately notify the company in writing, at its home office, of his refusal, and his membership fee shall be returned to him, and his application canceled; that contracts issued shall bear the numbers agreed upon, and the holder shall pay unto this company, at its home office, unless otherwise ordered by the board, a monthly instalment of $2 per month upon each contract, for each successive month from date of contract until cancellation; that the contracts issued shall be numbered in the numerical order issued, and to correspond with the numbers agreed to be given in pursuance of article 7, and shall be issued only in blocks of four; that, if any member shall fail or neglect to pay any instalment within fifteen days after it matures, he shall pay a fine of fifty cents for each such instalment; and if such instalments and fines shall not be paid within fifteen days from the time when such fine was assessed, together with the instalment then maturing, the contract upon which the instalment matured and the fine was assessed shall thereupon lapse and become null and void, and all payments and instalments theretofore made thereon shall be forfeited; nor shall this company give, or be required to give, any notice of the maturity of instalments or the assessment of fines, or of forfeiture or lapse of contract.

The rules then provide that there shall be created and maintained what shall be known as a "members' trust

fund," to which shall be applied $1 from each monthly instalment received, and all fines and transfer fees collected, and from which shall be made the payment upon contracts mentioned in article 12. Article 12 provides that, as often as there shall be in the members' trust fund the sum of $1,000, there shall be paid to the holder of one outstanding contract of membership the sum of $1,000, subject to certain conditions mentioned therein; that the first contract upon which payment shall be made shall be contract No. 1, the second payment shall be upon contract No. 4, the third payment upon contract No. 2, the fourth payment upon contract No. 8, and so on, reverting back to the first issued, unforfeited, unpaid nonmultiple contract and alternating with the lowest unpaid, unforfeited multiple of four, until like payments have been made to the holders of all issued, unforfeited, unpaid contracts; but the company shall be required to pay or make payment upon no contract until there is sufficient money in the members' trust fund therefor, nor until such contract is regularly reached in its order for payment: provided, however, that such contract has not been paid at expiration of time, or upon surrender, pursuant to the provisions of article 15. Article 14 provides that in case there shall have been less than sixty monthly instalments paid upon any contract of membership up to the time that such contract is canceled by payment, then there shall be deducted and reserved twenty per centum of the amount due upon every such contract; and article 15, after providing for a "reserve fund," provides further that whenever any contract shall mature, under the provisions for payment, forty-three years from and after the date thereof, provided it has not been paid before that time, there shall be paid to the holder thereof the sum of $1,000 from said reserve fund. It is also provided that all instalments shall be paid at the home office, unless otherwise ordered by the board, and proper receipts given; that all

receipts shall be numbered, and duplicate stubs with duplicate numbers to correspond with the receipt numbers shall be kept in the office.

The attorney general, on application to him as prescribed by secs. 3240, 3241, R. S., refused to bring an action to vacate said charter and annul said corporation, and so the relator was allowed to file his petition in this court, setting forth said articles of incorporation and organization in full, and alleging in effect that the business of the alleged corporation is illegal for the reasons that it has in it the element of chance and uncertainty and is in violation of the statutes against lotteries; that its manner of doing business is intended to deceive persons becoming members thereof; and that its business is illegal and contrary to law, and a common and public fraud.

The defendant answered said petition by way of admissions and denials, and among other things alleged, in effect, that the defendant has about 500 members and contract holders, and a large number of agents soliciting persons to become members; that it has not yet paid a contract of membership for the reason that it has not continued business long enough, nor extensive enough, for that purpose.

To such answer the relator demurred, on the ground that the same does not state facts sufficient to constitute a defense.

*Hugh Ryan*, for the plaintiff.

*David S. Rose*, for the defendant.

CASSODAY, J. There is really no dispute in the facts. The jugglery with figures provided for in the articles of incorporation, and mentioned in the foregoing statement, may be such as to make the rights of contract holders a matter of so much uncertainty and chance as to bring the defendant under the condemnation of the statutes against lotteries and gambling, as contended by counsel for the

relator. *Comm. v. Wright*, 137 Mass. 250; *Wilkinson v. Gill*, 74 N. Y. 63. But the view we have taken of the case makes it unnecessary to determine that question.

Of course, there can be no valid incorporation without legislative authority. As will be observed in the foregoing statement, the charter declares, in effect, that the business of the corporation "shall be to encourage frugality and economy in its members; to create, husband, and distribute funds from monthly instalments, dues, or investments from its members; to purchase, take, hold, sell, convey, lease, rent, and mortgage real estate and personal property; to loan surplus accumulations; and to carry on and conduct a general investment business." But we find nothing in the articles of incorporation "to encourage frugality and economy in its members." Besides, we find no statute authorizing an incorporation for any such purpose. The same is true in regard to creating, husbanding, and distributing funds from monthly instalments, dues, or investments from its members, as mentioned. The only statutory authority relied upon is sec. 1771, R. S., as amended. This statute does authorize the formation of a corporation "for buying, selling, exchanging and dealing in all kinds of property, real or personal, or both;" but it is manifest, from the articles of incorporation before us, that the buying, holding, leasing, and selling property is not the primary object of this corporation. On the contrary, its primary and most important object is to obtain moneys from its members, and its incidental or secondary object is the disposal of the moneys after they are so obtained. If, therefore, the general scheme for obtaining the moneys is without statutory authority, then the corporation has no legal existence. So, the statute authorizes the formation of a corporation "for loaning money on securities or otherwise." But "to loan surplus accumulations, and to carry on and conduct a general investment business," is

not the primary object of this corporation. On the con-
trary and as already observed, its primary object is to first
obtain the moneys from its members, and its incidental or
secondary object is to dispose of moneys so obtained. If,
therefore, such primary object is without statutory author-
ity, then the whole scheme must fail. Counsel for the
defendant was asked on the argument to state the real
business of this corporation, and he answered that it was
"a species of philanthropy." But there is nothing in the
articles of incorporation to justify the conclusion that its
purpose is to do good or bestow benefits upon its mem-
bers,— much less upon mankind in general. If it is de-
signed to confer favors upon any persons, it must be its
officers and managers. Besides, the section of the statute
cited does not authorize the formation of a corporation for
such philanthropy. The nearest approach to it is the au-
thority to form a corporation " for the establishment and
maintenance of any benevolent, charitable or medical in-
stitution, hospital or asylum." Of course, there was no
authority to form this corporation under that clause.

Counsel does not claim that this corporation belongs to
any of the classes of corporations specifically authorized by
the section, but he contends that the formation of such a
corporation is authorized by the general clause following
the several specific classes mentioned, to wit, " *or for any
lawful business or purpose whatever*, except " as therein
stated. .But, by a well-settled rule of construction, these
general words extend only to things of a kindred nature
to those specifically authorized by the section. *Noscitur
a sociis*. *Wisconsin Telephone Co. v. Oshkosh*, 62 Wis. 38.
That rule has been repeatedly applied by this court to
numerous statutes where general words have followed spe-
cific authority. *Bevitt v. Crandall*, 19 Wis. 583; *Edson v.
Hayden*, 20 Wis. 684; *Morse v. Buffalo F. & M. Ins. Co.*
30 Wis. 534; *Attorney General v. Railroad Cos.* 35 Wis.

519; *Campbell v. Campbell,* 37 Wis. 218; *Sawyer v. Dodge Co. Mut. Ins. Co.* 37 Wis. 503; *Cleaver v. Cleaver,* 39 Wis. 102; *Gibson v. Gibson,* 43 Wis. 33; *Kelley v. Madison,* 43 Wis. 645; *Wis. Cent. R. Co. v. Smith,* 52 Wis. 144; *Blake v. Blake,* 75 Wis. 343. Any other construction would enable parties, by mere agreement, to form a corporation for any conceivable "business or purpose whatever," not in violation of law. Certainly the legislature never intended to grant such unlimited authority.

It does not appear that the relator is an elector, citizen, or tax-payer of the state, nor that he is a member of, or in any way interested in, this corporation. It is merely alleged that he is a " resident " of the city and county of Milwaukee. It may be a serious question whether a mere private person who happens to reside in the state can, as relator, maintain such an action. *State ex rel. Cornish v. Tuttle,* 53 Wis. 45. But no such objection has been made. The question of the authority to form such corporation is so important that we deem it our duty to decide it.

*By the Court.*— The demurrer to the answer is sustained,. and judgment is hereby directed, vacating, dissolving, and annulling the corporate existence of the defendant, and ousting it of its franchises.