GEORGE R. WILLIAMS, Appellant, v. LEWIS INVESTMENT
COMPANY, FRANK W. VORSE, SOPHIA E. BATES, CALEB
B. ATKINS, MARY S. ATKINS, CATHERINE S.
CROSBY AND GEORGE H. LEWIS, Appellees.

**Investment Companies:** TAKING DEPOSITS: *Stockholder's liability.*
Code, chapter 1, title 9, amending Code 1873, chapter 1, title 9,
declared that all stockholders of banking corporations organized
thereunder, buying or selling exchange, receiving deposits of
money, or discounting notes should be individually liable to cred-
itors.   Acts 1860 required all associations organized under general
laws for transacting a business either in the way of buying or sell-
ing exchange, receiving deposits of money, etc., to make a certain
report; but when the provision was carried into Code 1873, section
1570, the words "either in the way of" were omitted. *Held*, that
as such omission indicated an intent to make the language, "buy-
ing and selling exchange," etc., generally descriptive of the bank-
ing business only, chapter 1, title 9, did not apply to an investment
company, the charter of which provided it might receive deposits
of money, and hence the stockholders of such company were not
individually liable.

*Appeal from Polk District Court.*—HON. C. P. HOLMES,
Judge.

WEDNESDAY, APRIL 11, 1900.

ACTION to recover of the stockholders in the Lewis
Investment Company, under chapter 208 of the Acts of the
Eighteenth General Assembly.   A demurrer to the petition
was sustained.   Plaintiff appeals.—*Affirmed.*

*Wharton & Baird* and *Bowen & Brockett* for appellant.

*Connor & Weaver, Geo. H. Lewis,* and *Wishard & Clark*
for appellees.

SHERWIN, J.—The Lewis Investment Company was a
corporation legally organized April 3, 1886, under the pro-
visions of chapter 1, title 9, of the Code of Iowa, with its

principal place of business in Des Moines. The purpose of its organization is stated in section 2 of its articles of incorporation as follows: "The purposes for which this corporation is arganized are to make loans upon real estate security in the state of Iowa, or in such other states or territories as may be deemed advisable, by the managing officers of said corporation; to purchase and sell mortgages and the bonds and warrants of states and municipalities, and negotiate loans for the same; to receive deposits, which may be secured by such evidences of indebtedness as shall be adopted by the board of directors, and pay such interest thereon as may be agreed upon. It may, if deemed best by the managing officers, loan money upon personal security or upon approved collateral. It may also acquire, hold, and sell, or otherwise dispose of, real estate and personal property, and, in general, exercise such powers as may be necessary and proper for carrying on the purposes for which it is organized. It may issue the negotiable bonds of the corporation, provided such issue shall be authorized by an affirmative vote of two-thirds of the stock outstanding at the time. The form, rate of interest, place of payment, and security of such bonds shall be determined by the board of directors. It may receive and invest funds for which it may be appointed trustee by any person, corporation, or court of law. It shall also possess such rights, privileges, and powers as are conferred on corporations for pecuniary profit by section 1059 of the Code of Iowa." In February, 1890, it issued its debenture bonds in the sum of one hundred thousand dollars, which are held by the plaintiff as trustee. In December, 1895, the investment company made an assignment for the benefit of its creditors. It was then insolvent. The defendants herein, other than the company, are stockholders therein. The assets of the company have been exhausted, and there is still due the plaintiff upon the bonds about thirteen thousand dollars. This suit was brought against the company for a deficiency judgment, and against the defendant stockholders

to recover of them the balance due on the bonds, under section 1 of chapter 208 of the Acts of the Eighteenth General Assembly. The stockholders demurred to the petition on the ground, among others, that the statute does not apply to the case at bar, and that they are not personally liable. This demurrer was sustained by the court below, and the correctness of this ruling is the controlling question before us for review; and we may say in this connection that its true solution is not entirely free from difficulty, as it requires a construction of the statute heretofore referred to, the language of which is as follows: "Chap. I. of title 9 of the Code of 1873 is hereby amended by adding thereto as follows: 'That all stockholders or shareholders in associations or corporations organized under said chapter I, aforesaid, for the purpose of transacting a banking business, buying or selling exchange, receiving deposits of money or discounting notes, shall be individually and severally liable to the creditors,' etc."

It will be noticed that the investment company was authorized by its articles of incorporation to receive deposits. The petition alleged that it had done so in the course of its business; and the real contention of the appellant is that its having so received deposits, and having so provided for receiving them, brings its stockholders within the provisions of the statute. On the other hand, the stockholders contend that the statute was intended to apply only to stockholders in corporations organized for the purpose of transacting a "banking business," as the term is generally understood, and that the words, "buying or selling exchange, receiving deposits of money or discounting notes," are merely descriptive of the banking business referred to, and were not intended as independent acts fixing the stockholders' liability. If it was the legislative intent that the stockholders in every corporation or association which received deposits of money, or bought or sold exchange, or discounted notes, should become personally liable to its creditors, no matter what the general

purpose of the corporation might be, and without regard to its public character, or to the amount of such business done, then the defendants are liable in this action. For the purpose of determining the legislative mind when this law was enacted, let us look to the prior constitutional provisions and statutory law touching the subject, and to the history of the special words and phrases under consideration.

Section 9 of article 8 of the constitution of 1857 provided for the double liability of "every stockholder in a banking corporation or institution." Chapter 114 of the Acts of the Seventh General Assembly provided a general banking law for the state. It created banks of issue, and defined the rights and powers of such banking corporations. A part of section 10 of the act (being section 1597 of the revision of 1860) is in the following words: "Such corporations shall have power to carry on the business of banking by discounting bills, notes and other evidences of debt, by receiving deposits, by buying and selling gold and silver bullion, foreign coins and bills of exchange, by loaning money, and by exercising such incidental powers as may be necessary to carry on such business." The title of the act is "An act authorizing general banking in the state of Iowa," and it is clearly apparent from the language of section 10 itself that the legislature was describing what it meant by the term "business of banking" as used in the act. Section 1617 of the same chapter provided, also, for the double liability of stockholders "in corporations organized under that act," in almost the identical language used in chapter 208 of the Acts of the Eighteenth General Assembly, and presumably to comply with the requirements of section 9 of article 8 of the new constitution. As the general banking act of 1858 treated only of banks of issue and circulation, the provision therein for the double liability of stockholders must have been recognized as applying only to banks of that description, and this court subsequently held that to be the rule under the constitutional provision from which the

legislative act was evidently drafted. *Allen v. Clayton,* 63 Iowa, 11. A general incorporation statute had then been in existence some years, under which the business of banking was carried on; for as early as 1860 the legislature passed an act providing "that all associations  *  *  *  organized under the general incorporation laws of this state for the purpose of transacting a banking business, either in the way of buying or selling exchange, receiving deposits, discounting notes," etc., shall make a quarterly statement, "verified by the oath of the president or vice-president, cashier or secretary, which statement shall contain the amount of capital stock actually paid in.  *  *  *  The amount of debts of every kind due to banks, bankers or other persons, other than regular depositors. The total amount due depositors, including sight and time deposits. The amount subject to be drawn at sight, then remaining on deposit with solvent banks or bankers.  *  *  *  The amount of gold and silver coin and bullion belonging to such association at the time of making the statement. The amount then on hand, of bills of solvent specie paying banks  *  '*  *  and the amount of bills, bonds, notes and other evidences of debt." This requirement of the revision was carried into the Code of 1873, and appears there as section 1570; but the words "either in the way of," following the words "banking business," in the section just quoted, were omitted. It is probably true that any corporation doing any one of the things specified in the law as it stood prior to 1873 would be required thereunder to make this quarterly bank statement; and the expunging of the words "either in the way of" from the Code of 1873 indicates the intention of the legislature to make the words "buying or selling exchange." etc., generally descriptive of the banking business under the general incorporation laws; and these words, as here used, were not, in our judgment, intended to bring within the purview of that statute any corporation or association which might buy a bill of exchange or discount a note. The character of the

act, its requirements, and the language used, all show that it
applied only to corporations doing a general banking busi-
ness.    In 1874 an act was passed governing savings banks,
by which act they were prohibited from forming or doing
business under the general incorporation laws, and by which
act all stockholders therein were made doubly liable to cred-
itors for all liabilities of the bank.    Chapter 208 of the Acts
of the Eighteenth General Assembly was passed in 1880.
Up to that time no statutory law existed fixing the double
liability of stockholders in banks organized under the general
incorporation laws of the state, and it might well be doubted
whether the constitution was broad enough to apply to such
banks.    The stockholders in banks of issue and circulation
and in savings banks had by legislative enactment been made
liable, and why not extend this liability to those of banks
organized under the general incorporation laws?    There was
no reason why it should not be done, but, on the contrary,
every consideration of public policy and of fairness
demanded that the same protection be extended to the
patrons of all banks; and this, we think, was the object of
the legislature when it enacted the law in question.    It was
an amendment to chapter 1, title 9 of the Code of 1873,
which treats solely of corporations for general purposes, and
under which corporations and associations were transacting
the banking business.    The language of the act, "buying or
selling exchange, receiving deposits of money or discounting
notes," follows substantially that used all through the legis-
lative enactments on the subject of banks both before and
after the passage of the act in question, and used in many
instances where no possible doubt can arise as to its being
merely descriptive of the "banking business," in the ordinary
acceptance of the term, and in others where it may be said
to distinguish between banks of issue and those of discount
and deposit, and in all cases used in connection with the
words "transacting a banking business."    The history of the
legislation upon this subject, and the history of these par-

ticular words in connection therewith, lead us to the con-
clusion that it was the legislative intent to impose double
liability upon stockholders in corporations or associations
organized for the purpose of transacting a banking business,
and upon those only, and that it was not its purpose or intent
to apply this law to stockholders in corporations which either
received deposits, or bought bills or notes, as an incident to
its general business.   This view is strengthened by the fact
that the legislature by subsequent enactment has made stock-
holders in loan and trust companies which receive deposits
and issue drafts subject to the same liability as stockholders
in banks (section 1889, Code 1897), and by the further fact
that this construction has been practically acquiesced in for
years by all classes of people.   See *Allen v. Clayton, supra.*
If the legislature had intended to fix a double liability upon
stockholders in all corporations which assumed any one of
the functions of the business of banking, it surely could, and
undoubtedly would, have done so in apt and appropriate
words, as by using the words "either in the way of," as it did
in the former act referred to, or by the use of other words of
limitation equally as precise.   Nor can it be successfully con-
tended that the lawmakers intended to make the act alone
of buying exchange or of discounting notes the foundation
for this double liability, because both of these acts represent
credit extended by the corporation, instead of liability
incurred.   That the Lewis Investment Company was not a
banking corporation, within the meaning of the statute, or
within the general definition of that term, can hardly be
questioned.   Indeed, we do not understand that appellant
contends that it was.   Its name, its general powers as defined
in its articles of incorporation, and the allegations of the
petition as to its real business, all indicate its purpose to
have been other than that of banking.   It is true, it provided
for receiving deposits, and did in fact receive some; but the
very language of the charter providing therefor in effect

provided for nothing more than borrowing money under the name of "deposits," and securing and paying interest thereon. The private property of ·its stockholders was exempted from liability, and every act done in connection with its organization, so far as the record discloses, shows that it had no intention of organizing as a banking institution; and we think it was not, and that the receipt of deposits .in the manner provided for did not so constitute it. 1 Morse, Banks (3d ed.) section 2-13; *Slate v. Scougal,·* 3 S. D. 55, (51 N. W. Rep. 858); *State v. International Inv. Co.,* 88 Wis. 512, (60 N. W. Rep. 796). The demurrer was rightly sustained, and the judgment of the district court is AFFIRMED.