L. A. ANDREW, State Superintendent of Banking, Appellant, v. CITY-COMMERCIAL SAVINGS BANK OF MASON CITY et al., Appellees.

JANUARY 17, 1928.

*John Fletcher,* Attorney-general, and *Blythe, Markley, Rule & Clough,* for appellant.

*Senneff, Bliss, Witwer & Senneff,* for appellees.

ALBERT, J.—In 1922, one A. M. Schanke was president of the City Commercial Savings Bank of Mason City, Iowa, a cor-

poration organized under the laws of the state of Iowa. In June of that year, he borrowed $15,000 from the Des Moines National Bank, and as security therefor, pledged 150 shares of the capital stock of the said City Commercial Savings Bank. This loan was represented by the personal note of A. M. Schanke, which was renewed from time to time, and which was reduced to the sum of $12,000 at the time the City Commercial Savings Bank went into the hands of a receiver, on the 11th day of May, 1925.

On June 5, 1924, the Des Moines National Bank, evidently anticipating the condition of the City Commercial Savings Bank, and attempting, so far as possible, to protect itself from the weakened condition of the bank, made application to one Stone, vice president of said bank, to cancel the 150 shares of stock which were held as collateral to the loan to Schanke, and to issue in place thereof a new certificate to one H. L. Horton, an officer of the Des Moines National Bank. Accordingly, on that date, a new certificate for $150 shares was issued to "H. L. Horton, Trustee."

In March, 1923, A. M. Schanke made application to the Cresco Union Savings Bank for a loan of $5,700, which loan was made by said bank to Schanke, and as collateral thereto, Schanke assigned, in blank, 57 shares of stock in the City Commercial Savings Bank of Mason City. Schanke's note for this loan was renewed several times.

Schanke was also interested in another corporation, known as Schanke & Company, of which he was president. In the latter part of May, 1924, this latter corporation went into receivership, whereupon A. J. Thompson, cashier of the Cresco Union Savings Bank, thinking to avoid involvements by reason of the receivership of the other corporation, surrendered the certificates for the aforesaid 57 shares of stock to the City Commercial Savings Bank of Mason City, and there was issued in lieu thereof a certificate for 57 shares of stock, running to "A. J. Thompson, Trustee." Both of these certificates of stock, except as to amount and time of issue, are identical in form.

The evidence shows that both the Des Moines National Bank and the Cresco Union Savings Bank carried Schanke's note as an asset of the bank, but neither carried the collateral as an asset, it being held purely as security for the respective notes.

44

It is sought by the receiver herein to hold H. L. Horton and A. J. Thompson personally liable, as owners of this stock, to the statutory liability. This is the only question involved in the case. The district court held that they were not liable, and the question is as to the correctness of his ruling.

Appellant first calls our attention to Article 8, Section 9, of the Constitution of the state of Iowa, reading as follows:

"Every stockholder in a banking corporation or institution shall be individually responsible and liable to its creditors, over and above the amount of stock by him or her held, to an amount equal to his or her respective shares so held, for all of its liabilities accruing while he or she remains such stockholder."

We have held that this provision of the Constitution has no application to banks other than banks of issue. *Allen v. Clayton*, 63 Iowa 11; *State v. Union Stock Yards State Bank*, 103 Iowa 549; *Williams v. Lewis Inv. Co.*, 110 Iowa 635; *Andrew v. Farmers Tr. & Sav. Bank*, 204 Iowa 243. Under this section of the Constitution, the City Commercial Savings Bank not being a bank of issue, no liability is created against stockholders; hence no further attention need be given to the constitutional provision.

Sections 9251, 9252, and 9253, Code of 1924, read as follows:

"9251. All stockholders of savings and state banks shall be individually liable to the creditors of such corporation of which they are stockholders over and above the amount of stock by them held therein and any amount paid thereon, to an amount equal to their respective shares, for all its liabilities accruing while they remained such stockholders."

"9252. Should any such association or corporation become insolvent, its stockholders may be severally compelled to pay such deficiency in proportion to the amount of stock owned by each, not to exceed the extent of the additional liability hereby created."

"9253. The assignee or receiver of any such corporation, or in case there is none, or of his failure or refusal to act, any creditor thereof, may maintain an action in equity to determine the liability of the stockholders, and the amount to which each creditor shall be entitled; and all parties interested shall be brought into court."

These three sections combined are a duplicate of Section 1882, Code of 1897.

Under these sections of the Code, a statutory liability is created in case of insolvency of the bank. There seems to be little dispute between the parties that this liability rests on the *owner* of the stock; and the real question, therefore, to be determined, as applied to the facts of this case, is, Who were the owners of these respective shares, within the meaning of this section? It is insisted by appellant that H. L. Horton and A. J. Thompson were, respectively, the owners of this stock. This contention is based on the fact that the stock certificates were issued to "H. L. Horton, Trustee," and "A. J. Thompson, Trustee," without any designation of the beneficiaries of the respective trusts. It is therefore urged that, because no beneficiaries were named, the stock was owned, within the meaning of the statute creating the liability, by H. L. Horton and A. J. Thompson, individually, and that they should be held personally responsible to this statutory liability.

The books of the corporation show the transfer of these respective shares of stock to Horton and Thompson, and the entries on the books are respectively to "H. L. Horton, Trustee," and "A. J. Thompson, Trustee." These entries are made in pursuance of Section 9192, Code of 1924. We have nothing before us, however, showing the by-laws of the corporation with reference to these transfers; nor are there any other provisions in the "banking code" with reference thereto. It is true that there are certain provisions in the general corporation laws regulating matters of this kind, and also providing as to the transfer of stock as collateral security; but by reason of the later ruling in this case, we do not determine this question.

It seems to be the almost universal holding that, where bank stock is pledged as security, and the stock is transferred to the pledgee on the books of the corporation, and is entered in his individual name, he steps into this statutory liability. An elaborate note on this will be found in 7 Corpus Juris 504, Note 86. See, also, 10 Am. & Eng. Ann. Cas. 783; *Hurlburt v. Arthur*, 140 Cal. 103 (98 Am. St. 17). We have recognized the same rule in *Hale v. Walker*, 31 Iowa 344; *Calumet Paper Co. v. Stotts Inv. Co.*, 96 Iowa 147.

The theory of this line of authority is that, by allowing the stock to appear in his personal name on the records of the corporation, he thereby leads the creditors and all other persons to believe that he is the real owner of the stock, and the law will not afterwards permit him to claim otherwise. He thus holds himself out to the public as a shareholder; and persons dealing with the bank have no means of knowing the nature of the contract under which he holds the stock, and have a right to presume, and are thereby led to believe, that he is the absolute owner of it, and it is but fair to presume that they deal with the bank upon the faith and credit of the parties thus appearing as stockholders. *Magruder v. Colston*, 44 Md. 349 (22 Am. Rep. 47) ; *Tierney v. Ledden*, 143 Iowa 286.

This rule, however, does not exactly cover the question we have before us, because, in the instant case, the certificates issued and the books of the corporation show this stock to be in the names of "H. L. Horton, Trustee," and "A. J. Thompson, Trustee." The question, therefore, is whether or not the additional word "trustee," after the name of each of these parties, calls for the application of another and different rule than the general rule above stated. It is the claim of the appellant that the addition of the word "trustee" to the names of these parties is merely *descriptio personae*. That such is recognized to be the rule in the states of Maine, Indiana, and Missouri is true, but the greater weight of modern authority is all to the contrary. In the case of *Shaw v. Spencer*, 100 Mass. 382 (97 Am. Dec. 107), stock certificates were issued to one E. Carter, trustee. He attempted to pledge these certificates for his private debts, and it was there urged, as it is here, that the word "trustee" following the name of Carter was *descriptio personae*. In that case the court said:

"Unless the word 'trustee' may be regarded as mere *descriptio personae*, and rejected as a nullity, there was plain and actual notice of the existence of a trust of some description. A trust as to personalty or choses in action need not be expressed in writing, but may be established by parol. And that the mere use of the word 'trustee' in the assignment of a mortgage and note imports the existence of a trust, and gives notice thereof to all into whose hands the instrument comes, has been expressly decided by this court [citing cases]. * * * This would hardly be

controverted in a case where the stock was held by 'A. B., trustee for C. D.' But the effect of the word 'trustee' alone is the same. It means trustee for someone whose name is not disclosed; and there is no greater reason for assuming that a trustee is authorized to pledge for his own debt the property of an unnamed *cestui que trust* than the property of one whose name is known. In either case, it is highly improbable that the right to do so exists. The apparent difference between the two springs from the erroneous assumption that the word 'trustee' alone has no meaning or legal effect. * * * Notice of the existence of a trust is, by all the authorities, held to impose the duty of inquiry as to its character and limitations.''

This doctrine of the Massachusetts court is accepted and adopted by the United States Supreme Court in the case of *Duncan v. Jaudon,* 15 Wall. 165 (21 L. Ed. 142). See, also, *McLeod v. Despain,* 49 Ore. 536 (19 L. R. A. [N. S.] 276). In that case, certain mortgages and notes were assigned to C. B. Wade, trustee. After reviewing a large number of cases involving this question, that court reached the following conclusion:

''This point has not heretofore been directly before this court; but we find the great weight of authority, as well as the better reasoning, supports the rule that the word 'trustee,' added to a payee's name in a written instrument, is sufficient to put the purchaser upon inquiry as to all the terms and conditions under which it may have been executed, and, in the absence of such inquiry, knowledge thereof will be presumed.''

Cases on this subject are collated in the note to Section 722, 8 Corpus Juris 515.

While this question has never been squarely before this court, we feel that the rule announced by the great weight of authority has reason and logic behind it; and it is our holding that the use of the word ''trustee,'' following these names, is not to be considered merely as *descriptio personae,* but is effective as notice to all parties that the interest or rights of Horton and Thompson were only conditional, and had this notice been followed up by inquiry, their real relation to the certificates could have been disclosed. Since we find that this stock was held by these parties merely as trustees, it necessarily follows that they are not stockholders, within the meaning of the above

quoted statute creating a liability against stockholders. All we are holding here is that, under the facts in this case, the pledge holder is not personally liable under this section. The questions of what person or persons, aside from the pledge holder, should pay this statutory liability, and also whether or not the pledge holder takes the stock subject to said liability, are questions that are not before us; hence they are left undetermined.

The holding of the district court was right.—*Affirmed.*

STEVENS, C. J., and DE GRAFF, MORLING, and WAGNER, JJ., concur.