HILLIER and others, Plaintiffs, vs. LAKE VIEW MEMORIAL PARK, INC., Defendant.

*May 10—June 20, 1932.*

*Bird, Smith, Okoneski & Puchner* of Wausau and *Bouck, Hilton, Kluwin & Dempsey* of Oshkosh, for the plaintiffs.

*Barber, Keefe, Patri & Horwitz* of Oshkosh, for the defendant.

OWEN, J. The defendant Lake View Memorial Park, Inc., is a corporation organized under ch. 180 of the Statutes "To buy, sell, own, hold, and operate real and personal property of all kinds; to conduct and operate cemeteries, nurseries, greenhouses and to own, sell, and trade any personal property of all kinds necessary or incident to the operation or management of nurseries, greenhouses and

cemeteries; to own, buy and sell securities of all kinds." Its articles of incorporation were filed in the office of the secretary of state on the 7th day of April, 1931. Since that time it has acquired a tract of land, and platted it into cemetery lots, which plat has been approved and filed as required by law. About 800 of said lots have been sold and there have been twenty-two interments in said cemetery.

The plaintiffs are, for the most part, dealers in cemetery monuments, and on the 10th day of May of the present term petitioned this court for leave to commence an action to forfeit the franchise of said defendant to conduct and operate cemeteries, on the ground that its incorporation for such purpose was not authorized by the provisions of ch. 180 of the Statutes, and that the only and exclusive method of incorporating cemetery associations is to be found in ch. 157 of the Statutes, with the provisions of which it made no attempt to comply. The court, deeming the question of law presented an important one, granted the petition and authorized the petitioners to commence an action in this court for the purpose of deciding the validity of that feature of the defendant's corporate franchise. By stipulation in open court, the petition of the petitioners and the reply of the defendant were permitted to stand as the pleadings in the case, and the issue thus raised is whether a corporation may be organized under ch. 180 of the Statutes to conduct and operate cemeteries.

In the brief filed upon the merits of the case counsel for the defendant calls our attention to sec. 286.46, which provides:

"The provisions of this chapter shall not extend to any incorporated library or lyceum society, to any religious corporation or any incorporated academy or select school, nor to the proprietors of any burying ground incorporated under the laws of this state."

As the authority of the petitioners to maintain this action is found in ch. 286, it is contended that the section just quoted exonerates the defendant from the visitorial jurisdiction here sought to be exercised. We shall not state our reasons at length, but we are clear that the corporation here involved is not exempted from the visitorial powers here invoked by reason of the phrase found in sec. 286.46 which exempts from all of the provisions of that chapter "the proprietors of any burying ground incorporated under the laws of this state." It is to be noted that this provision exempts "the proprietors of any burying ground." It does not exempt a corporation such as the defendant. This provision of law first appeared in our statutes as sec. 26 of ch. 114 of the Statutes of 1849. At that time ch. 114 contained no provision similar to that found in sec. 286.36, under which this action is brought. While that circumstance perhaps is not conclusive upon the legislative intent not to exempt a corporation such as the defendant from the provisions of sec. 286.36, as that chapter has been re-enacted since sec. 286.36 was embodied therein, it does indicate that in the beginning the legislature had no such intention. Originally the expression "the proprietors of any burying ground" must have referred to the proprietors of a cemetery organized under ch. 48 of the Revised Statutes of 1849, which now appears, with amendments and amplifications, as ch. 157 of the present statutes. That chapter makes frequent use of the expression "proprietor of a lot in such cemetery." It is to be found in secs. 9, 10, 14, 15, and 16 of said ch. 48. It is rather plain that the expression "proprietors of any burying ground" now found in sec. 286.46, but which originated as sec. 26 of ch. 114 of the Laws of 1849, relates to that which was accorded legal recognition by the Statutes of 1849, and this appears to be those who owned or were the proprietors of lots in a cemetery association organized under

ch. 48 of the Laws of 1849, which now appears as ch. 157 of our Statutes.

Coming now to the question of whether a corporation organized for the purpose of owning and managing a cemetery may be formed under ch. 180 of the Statutes, it is to be remarked that prior to 1898 the only statutory provisions for the incorporation of cemetery associations were to be found in ch. 48 of the Laws of 1849 as continued and amplified in succeeding revisions, and which appear in our present statutes as ch. 157. We do not hesitate to say that so long as the statute law upon the subject so continued, said ch. 48 furnished the only method in this state by which a cemetery association could become incorporated. Prior to 1898 the general incorporation statutes of the state provided for the organization of specified corporations, most of a commercial character. Sec. 1771, Stats. 1898. Following the specific designations therein found for which a corporation might be organized was the blanket provision "or for any lawful business or purpose whatever, whether similar to the purposes herein mentioned or not, except the business of banking, insurance (other than title insurance), building or operating public railroads or plank or turnpike roads or other cases otherwise specially provided for." In *State ex rel. Lederer v. Inter-National Inv. Co.* 88 Wis. 512, 60 N. W. 796, it was held that the blanket provision "or for any lawful business or purpose whatever, except" was limited by the doctrine of *noscitur a sociis* to corporations of a nature kindred to those specifically authorized by the section. There was no express provision in this section, or in the statutory law of that time, authorizing the incorporation of a cemetery association as an ordinary business or commercial institution, or in any other manner, except that provided in ch. 157.

However, the Revised Statutes of 1898 introduced a decided change in sec. 1771, the general corporation statute.

In that revision sec. 1771 specifically provided for the organization of corporations to carry on eighty designated activities or enterprises. By the provisions of this section it was specifically provided that corporations might be formed in the manner provided in ch. 86, the general incorporation laws, for "cemeteries, and the purchase, holding and regulation thereof." Furthermore, the blanket provision following these eighty specifications was changed to read as follows: "or for any lawful business or purpose whatever, whether similar to the purposes herein mentioned or not." The phrase "whether similar to the purposes herein mentioned or not" was inserted for the purpose of eliminating the rule of *State ex rel. Lederer v. Inter-National Inv. Co.* 88 Wis. 512, 60 N. W. 796, which applied the doctrine of *noscitur a sociis* to the blanket provision as it appeared in the Statutes of 1878 so as to make it clear that a corporation might be formed under said ch. 86 for any lawful purpose or business whatever.

With the enactment of the Revised Statutes of 1898, therefore, we find two specific provisions for the incorporation of cemeteries: one under ch. 59, now ch. 157, and the other under ch. 86, now ch. 180. These are two specific and definite provisions under which corporations for the conduct and management of cemeteries may be formed. Thereafter there was no room to say that either statute was special, or that either prevailed over the other. They were in no manner repugnant, and a cemetery corporation could be organized under one statute or the other pursuant to specific legislative authorization. Said sec. 1771, now sec. 180.01, was revised by ch. 534 of the Laws of 1927, and it simply provides that "three or more adult residents of this state may form a corporation in the manner provided in this chapter for any lawful business or purpose whatever, except banking, insurance and building or operating public rail-

roads, but subject always to provisions elsewhere in the statutes relating to the organization of specified kinds or classes of corporations." This change was wrought by a revisor's bill, which was accompanied by the following note: "It being settled that the general language 'for any lawful business or purpose' is to be given its literal meaning, there remains no sound legislative reason for retaining the long enumeration of purposes. The list is incomplete at best; its omission does not change the law." And again the revisor's note says: "Sec. 180.01 should be so amended as to specify, by plain designation, all of the exceptions to these general rules for incorporation. It is believed that ch. 186, 187, and 188, Statutes, cover provisions which are intended to be included within the meaning of the phrase 'other cases otherwise specially provided for' found in sec. 180.01, Statutes."

Stated in direct language, this section authorizes the formation of a corporation for the transaction of any lawful business or purpose, except banking, insurance, and building or operating public railroads. These corporations are excepted because they are specifically provided for in other parts of the statutes mentioned in the revisor's note of 1927. However, it is to be noted that corporations which are authorized shall be "subject always to provisions elsewhere in the statutes relating to the organization of specified kinds or classes of corporations."

Ch. 157, as we have seen, covers specifically and comprehensively the organization of cemetery associations. Does the phrase just quoted from sec. 180.01 now require cemetery corporations to be incorporated pursuant to the provisions of said ch. 157? In the Statutes of 1878, and since, sec. 1771 contained a similar saving clause. In sec. 1771 of the Statutes of 1878, after enumerating various specific purposes for which corporations might be formed, we find the blanket provision "or for any lawful business or purpose

whatever, except the business of banking, and insurance, building or operating railroads or plank or turnpike roads, or other cases otherwise specially provided for." As here used, the phrase "cases otherwise specially provided for" clearly reserved from the blanket clause "cases otherwise specially provided for." We cannot impute to the legislature an intent to provide by the terms of sec. 1771 for the organization of specifically designated corporations and then to withdraw, from those specifically designated, corporations "otherwise specially provided for." The phrase as found in sec. 1771 of the Statutes of 1898 excepts only from the blanket clause corporations "otherwise specially provided for." As stated, the Statutes of 1898 amplified the specific purposes for which corporations might be organized. The blanket clause found in sec. 1771 of the Statutes of 1898 is exactly the same as that found in the same section of the Statutes of 1878. But the Statutes of 1898 specifically designate as one of the purposes for which a corporation might be formed under the provisions of ch. 86 "cemeteries, and the purchase, holding and regulation thereof." The blanket clause, therefore, in sec. 1771 of the Statutes of 1898, "other cases otherwise specially provided for," cannot be construed as exempting from the provisions of ch. 86 corporations specifically authorized by said sec. 1771.

It is well established that in cases of ambiguity arising from the enactment of a revisor's bill it will be presumed that there was no intention to work any radical change in the law. *Van Brunt v. Joint School District,* 185 Wis. 493, 201 N. W. 755; *Wisconsin Gas & E. Co. v. Fort Atkinson,* 193 Wis. 232, 245, 213 N. W. 873. The revisor's notes are treated as of much importance in ascertaining the legislative intent. *State ex rel. Globe Steel Tubes Co. v. Lyons,* 183 Wis. 107, 197 N. W. 578. We therefore not only have the presumption that no radical change in the law was intended,

but we have the statement of the revisor that, in his judgment, no change in the law was accomplished by compressing into a very few lines matter which theretofore occupied nearly two pages of the statutes. It being held that under the statute as it existed preceding the revision of 1927 a corporation could be organized to own, manage, and operate a cemetery, as a corporation, under the former sec. 1771, it must be conceded that a very radical change in the law was accomplished by the revision of 1927 if it be held that under the provisions of sec. 180.01 a commercial corporation for such purpose cannot be so formed. To so hold would be to work a basic change in the law in a respect plainly not within the contemplation of the revisor or the legislature. We therefore hold that a commercial corporation can be organized under the provisions of the present ch. 180 of the Statutes for the owning, managing, and operating of a cemetery, since the revision of 1927 as well as before.

We are not doubtful upon the proposition that since the revision of 1898 two distinct methods were provided by the statutes for the formation of so-called cemetery corporations. That the public as well as the secretary of state so construed the law, is indicated by the records in the office of the secretary of state, of which we take judicial notice. By those records it appears that twelve cemetery corporations have been formed under the general corporation statutes for the conduct and management of cemeteries, extending through the years from 1910 to 1929. Many of these corporations are now the proprietors of burying grounds in which no doubt numerous dead are now interred. To now hold that these corporations are exercising franchises not conferred upon them by law would result in rather deplorable consequences and frustrate the desires of those who have purchased lots in such cemeteries. It is true that courts have been reluctant to extend liberal construction to statutes

invoked to justify the formation of private corporations for the purpose of constructing cemeteries. This is in accordance with a tradition which hallows the burying places of the dead, which tradition is repugnant to the notion that ground so dedicated to the perpetual repose of the remains of the dead should be the subject of sordid trafficking and commercial profit. However, the fact that twelve cemeteries have been so organized since the revision of 1898 is some evidence that this tradition is being gradually dissipated in the mind of the public, some considerable portion of which look with favor upon privately managed cemeteries.

It stands admitted by the pleadings in this case that the defendant has dedicated a certain percentage of the funds derived from a sale of the lots as a perpetual trust fund, the· income from which is to be devoted to the up-keep and maintenance of the cemetery grounds. A well-kept cemetery appeals to the pride of the living, and assurance of the perpetual care of the graves of one's dead is of no slight consideration in the selection of the eternal resting place. It is not necessarily surprising, as indicated by experience as well as the records to which we have referred, if privately managed cemeteries, with the assurance of perpetual care, are coming to have an appeal. These are considerations, however, which can be accorded no weight in determining the question before us. We simply refer to them to indicate that there may be a change in public sentiment which has animated the discussions of courts upon this question, of which the case of *Brown v. Maplewood Cemetery Asso.* 85 Minn. 498, 89 N. W. 872, may be referred to as typical.

*By the Court.*—The prayer of the petitioners is denied.